UNITED STATES, Appellee

v

LEONARD J. SAFFORD, Staff Sergeant,
U. S. Army, Appellant

19 USCMA 33, 41 CMR 33

No. 21,929

October 17, 1969

Colonel Daniel T. Ghent, Lieutenant Colonel Charles W. Schiesser, Major David J. Passamaneck, and Captain Paul C. Saunders were on the pleadings for Appellant, Accused.

Colonel David T. Bryant, Lieutenant Colonel David Rarick, Major Edwin P. Wasinger, and Captain Benjamin G. Porter were on the pleadings for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted of one specification of larceny of a United States Treasury check (Charge I) and two specifications of conspiracy to violate sections 793(c) and (e), Title 18, United States Code (Charge II). The charges were preferred under Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. We granted review to determine the validity of his conviction in light of the Supreme Court's decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

Since the accused pleaded guilty as charged, no evidence was presented on the merits. The circumstances surrounding the charged offenses, however, were made a matter of record by the introduction of a stipulation of fact (Prosecution Exhibit 1), pertinent portions of which are set forth below:

"On or about 10 January 1966, Staff Sergeant Leonard J. Safford obtained a part-time job as a secur-

ity guard for the Pinkerton agency. His primary assignment was at the Southern Oxygen Division, Air Products & Chemicals, Inc., Bladensburg, Maryland. On or about 18 June 1966 Sergeant Safford, while checking the security of the business office at the Southern Oxygen Division, sorted through a stack of mail laying on top of one of the desks. After examining the contents of the mail by holding the envelopes up to the light, he stole an envelope containing a check. This check, dated 17 June 1966, was made by the U. S. Government and payable to the Air Products and Chemicals, Inc., in the amount of $24,076.78. (The loss of this check was reported to the Treasury and a substitute check was later issued to Air Products & Chemicals, Inc.)

"During the period of March 1966 to August 1967, Staff Sergeant Leonard J. Safford conspired with MSG Ullysses L. Harris to obtain and pass information relating to the national defense to agents of a foreign government, to wit: the Soviet Union. This was accomplished by personal meetings, telephone conversations, and letters between Sergeant Safford and Sergeant Harris. During this time Sergeant Safford was a member of the Strategic Army Communications Command with duty at the Pentagon Facility, then later with duty at STRATCOM Headquarters, Suitland, Maryland. Sergeant Harris was attending school at Ft Monmouth, N. J., and lated was assigned to Ft Monmouth."

The remainder of the stipulation sets forth in detail the manner in which the conspiracy was carried out and identifies the specific national defense information referred to in the specification. Nothing further is contained therein concerning the larceny offense.

We considered the "service connection" of Charge II, which alleges a conspiracy to commit espionage against the United States, in United States v Harris, 18 USCMA 596, 40 CMR 308.

Harris, as noted above, was Safford's co-conspirator and was similarly charged and convicted in a separate trial. In sustaining court-martial jurisdiction in *Harris,* we said:

"Jurisdiction to try offenses within the purview of section 793, Title 18, United States Code, is cognizable in the Federal district courts of the United States. Ordinarily the matter would be tried there. In this case, however, the documents involved were inner-working papers of the military establishment and, while not containing a security classification, one was marked for official use only. They were not generally available to the civilian populace. The security and integrity of these documents rests exclusively within the military establishment.

"There can be little doubt but that the charged offense of conspiracy between senior noncommissioned officers and representatives of a foreign power for the purpose of obtaining and receiving certain information connected with the national defense directly offends 'against the government and discipline of the military state.' Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 723–724. Especially is this so when, as here, the information is immediately connected with the operation of the military establishment."

As in *Harris,* we find the offense under Charge II to be "service connected" within the meaning of O'Callahan v Parker, supra, and hold that the court-martial had jurisdiction to try this offense.

The same is not true, however, of the charge of larceny (Charge I). The offense was committed in the civilian community, while the accused was performing no military duties, and the victim of the theft was a civilian company. The offense was cognizable in the courts of the State of Maryland. There is no evidence in this record that the larceny of this check had any con-

34

nection with Charge II or any military significance other than the status of the accused as a member of the armed forces. Absent evidence of "service connection," the court-martial was without jurisdiction to proceed thereon. O'Callahan v Parker, supra; United States v Prather, 18 USCMA 560, 40 CMR 272; United States v Armes, 19 USCMA 15, 41 CMR 15.

The finding of guilty of Charge I is reversed and the charge and its specification are ordered dismissed. The sentence is also reversed. The rec-

ord of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining finding of guilty of Charge II.

Judge DARDEN concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

I would also affirm the findings of guilty of Charge I and its specification on the basis of my opinion in United States v Borys, 18 USCMA 547, 40 CMR 259.